171 So.2d 526 (1965)
Percy PALETHORPE, as Tax Assessor, et al., Appellants,
v.
Leta THOMSON et al., Appellees.
No. 33474.
Supreme Court of Florida.
January 26, 1965.
Rehearing Denied March 5, 1965.
*528 Earl Faircloth, Atty. Gen., Fred M. Burns, Asst. Atty. Gen., Charles D. McClure, Gen. Counsel for the Comptroller, and Willard Howatt, St. Augustine, for appellants.
Austin, Basford & Millar, and Albert S.C. Millar, Jr., Jacksonville, for appellees.
ERVIN, Justice.
This is an appeal from the Circuit Court of St. Johns County. Jurisdiction is vested in this Court under Article V, Section 4, Constitution of Florida, F.S.A., because the chancellor in his final decree passed directly upon the validity of certain statutes and construed controlling provisions of the Florida Constitution.
The appellants, defendants below, are Ray E. Green, as Comptroller of the State of Florida, Percy Palethorpe, as Assessor of Taxes for St. Johns County, Florida, and R.D. Hill, as Tax Collector for St. Johns County.
Appellees, Leta Thomson, et al., plaintiffs below, instituted proceedings for declaratory decree, individually and as representatives for numerous owners of trailers which are variously referred to as trailer coaches, house trailers, or automobile trailers, used for housing accommodations in St. Johns County, to determine the validity of ad valorem tangible personal property tax assessments imposed by said Assessor upon the several trailer coaches or house trailers owned by the appellees, under and pursuant to Chapter 200, Florida Statutes, for the tax year 1963, and allege said Tax Assessor has threatened to impose the same taxes on said trailers for the tax year 1964, notwithstanding the exemption provisions of Sections 200.45 and 320.081, Florida Statutes, F.S.A., and Section 13, Article IX, Florida Constitution. Section 200.45 reads as follows:
"200.45 Personal property tax; automobile trailers
"(1) There is hereby levied and assessed upon each automobile trailer that does not have a current year's Florida license tag thereupon the same amount that is assessed upon all other personal property within the county where such trailer is found to be.
"(2) The county tax assessor of the county wherein said trailer is found to be shall issue a certificate of valuation which shall be immediately conveyed to the tax collector of the county and the tax collector of such county shall collect the same within fifteen days from the date of such certificate of valuation and if same is not paid said automobile trailer is hereby made subject to levy and sale the same as any other delinquent personal property in the state, provided, however, that the owner of such trailer may purchase a Florida license tag for such trailer at any time prior to the issuance of such certificate of valuation, and the same shall operate to exempt such trailer from said ad valorem tax assessment.
"(3) If such certificate is issued before November first the tax rate thereupon shall be based upon the same as the previous year's rate."
Section 320.081, Florida Statutes, F.S.A., provides:
"320.081 License fees for trailer coaches and trailers used for housing accommodations
"(1) This section shall apply only to trailers and vehicles not self-propelled used for housing accommodations and known as trailer coaches.
"(2) The annual license fee to be paid by said owners and operators of house trailers in the state shall be fifteen dollars; and shall be paid to the motor vehicle commissioner of the state at the same time and in the same manner as *529 provided for other motor vehicle licenses. This license tax shall be in lieu of all other taxes and a suitable license plate shall be issued to evidence payment thereof.
"(3) It shall be permissible in this state to operate a trailer coach, licensed hereunder without a corresponding state license on the vehicle towing same."
The appellants by their motions for summary decree and answer to the complaint admitted the material allegations of fact contained in the complaint of the appellees, but contended that the automobile house trailers (trailer coaches) described in the complaint are not "motor vehicles" within the purview and contemplation of Section 13, Article IX, Florida Constitution, and that Sections 200.45 and 320.081, Florida Statutes, are violative of Sections 1 and 13, Article IX, Florida Constitution.
By his final decree the chancellor upheld the position of appellees and held Sections 200.45 and 320.081, Florida Statutes, valid and constitutional. The chancellor also imposed and taxed the costs incurred in this litigation against the appellants, which they contend is error.
Appellants argue that Section 1, Article IX, Florida Constitution, standing alone, would render Sections 200.45 and 320.081, Florida Statutes, invalid. Section 1, Article IX, requires that the Florida Legislature "shall provide for a uniform and equal rate of taxation * * * and shall prescribe such regulations as shall secure a just valuation of all property, both real and personal, exempting such property as may be exempted by law for municipal, education, literary, scientific, religious or charitable purposes." Sections 200.45 and 320.081, Florida Statutes, F.S.A., are intended to exempt automobile trailers (trailer coaches) used for housing accommodations from the ad valorem taxes imposed under Chapter 200, Florida Statutes, if motor vehicle license tags have been purchased for said trailers by their owners. The Florida Constitution is a limitation on power and not a grant of power. Consequently, the Legislature cannot exempt from taxation any class of real or personal property which the Constitution itself makes no provision for exempting. See L. Maxcy, Inc., v. Federal Land Bank, 111 Fla. 116, 150 So. 248, 151 So. 276; State ex rel. Burbridge v. St. John, 143 Fla. 544, 197 So. 131; State ex rel. Miller v. Doss, 146 Fla. 752, 2 So.2d 303.
Sections 200.45 and 320.081, F.S., can only be held constitutional  if at all  under Section 13, Article IX, Florida Constitution. Said Section 13, Article IX, provides that "Motor Vehicles, as property, shall be subject to only one form of taxation which shall be a license tax for the operation of such motor vehicles, which license tax shall be in such amount and levied for such purpose as the Legislature may, by law, provide, and shall be in lieu of all ad valorem taxes assessable against motor vehicles as personal property."
Appellees argue that their coach or house trailers are "motor vehicles" within the purview of Section 13, Article IX. Appellants contend to the contrary and that F.S. Sections 200.45 and 320.081, F.S.A., are unconstitutional.
Historically, the long adhered to definitions of a motor vehicle appearing in the statutes and enunciated in the court decisions of our state and as understood by the public connote something other than a house trailer which is not self-propelled and is used primarily for housing accommodations. This can best be visualized by briefly outlining the statutory definitions of motor vehicles and automobile trailers employed in our state from earliest to latest enactments along with pertinent judicial interpretations thereof.
We recognized the vagueness of statutory definitions of a motor vehicle in Gibbs v. Mayo, Fla., 81 So.2d 739. There, we stated that a "motor vehicle is such a vehicle which is self-propelled."
*530 In Section 1280, Compiled General Laws, 1927, the term "motor vehicles" was defined as including "motorcycles, automobiles, motor trucks, and all other vehicles operated over the public streets and highways of this State, and propelled by power other than muscular power, except traction engines, road rollers, and such vehicles as run only upon a track." Without material change, this definition obtains today in F.S. Section 320.01(1), F.S.A. The same connotation appears in the definition of trailers in Section 320.01(5): "* * * vehicles coupled to, or drawn by, a motor vehicle." In F.S. Section 317.011(57), F.S.A., a trailer is defined:
"Trailer. Every vehicle with or without motive power, other than a pole trailer, designed for carrying persons or property and for being drawn by a motor vehicle and so constructed that no part of its weight rests upon the towing vehicle."
In F.S. Section 186.03(22), F.S.A., the Legislature defines a motor vehicle as follows:
"(22) Motor vehicle. All vehicles propelled by power (other than muscular power), trailers, semi-trailers, trailer coaches and trolley coaches, excepting, however, road rollers, and vehicles which operate only upon rails or tracks in place on the ground, or that travel through the air or that derive their motive power from overhead electric lines, farm tractors, farm trailers, and other machines and tools used in the production, harvesting and care of farm products."
F.S. Section 186.03(56), F.S.A., defines trailers as follows:
"(56) Trailer. Every vehicle without motive power, designed to carry property or passengers wholly on its own structure and to be drawn by a motor-vehicle."
The exemption of F.S. Section 320.081, F.S.A., "shall apply only to trailers and vehicles which are not self-propelled used for housing accommodations and known as trailer coaches."
The substance of the foregoing definitions of "motor vehicles" and "trailers" obtained in 1930 when Section 13, Article IX became a part of the Florida Constitution. We cannot seriously entertain the view that the people of Florida when they adopted Section 13, Article IX, understood or intended to mean that coach or house trailers primarily devoted to housing accommodations were per se "motor vehicles" under said constitutional provision.
Appellees rely upon our decisions in L.B. Smith Aircraft v. Green, Fla., 94 So.2d 832, and Wood v. Club Transportation Service, Inc., 143 Fla. 449, 196 So. 843, in support of their contentions.
In L.B. Smith Aircraft v. Green, supra, it is stated: "The laws of this State treat aircraft as motor vehicles for purposes of tax exemption under Florida Constitution, Article IX, Section 13, F.S.A." The Court was referring in particular to F.S. Section 330.06(1), F.S.A. Aircraft have kindred similarities to motor vehicles in respect to their primary use and function and their propulsion and transportation. It is hardly a constitutional contradiction for the Legislature to treat aircraft operated in the airways the same as it does motor vehicles operated over the highways for ad valorem tax exemption purposes. But when the exemption of Section 13, Article IX is sought to be applied to trailers used primarily for housing purposes, the legislative prerogative goes beyond legitimate bounds.
Our decision in Wood v. Club Transportation Service, Inc., supra, does not lend support to appellees' position either. There the question was whether so-called "aerocars" fell in the classification of "motor vehicles." The undisputed facts were that these "aerocars" were trailers equipped with two wheels and a coupling by which they were attached to the rear end of automobiles. They had seats and were *531 used only for transportation of luggage and passengers to and from hotels and between hotels and passenger stations. Others were used as sightseeing vehicles. Clearly, the primary purpose of the "aerocars" was to transport persons and property. In fact, this was the only purpose and actual use made of them.
There is nothing in the exemption statutes defining or describing coach or house trailers which conclusively brings them into the class of constitutionally exempt motor vehicles or which precludes any factual inquiry as to the exempt or non-exempt status of any particular trailer. The emphasis of the legislation is placed upon trailers that are not self-propelled and which are used for housing accommodations. The use of the terms "house trailer" and "housing accommodations" imputes connotations contrary to the status of an exempt motor vehicle. In our opinion the language employed falls short of language sufficient to bring house trailers eo nomine into the constitutionally exempt class per se. In reaching this conclusion, we necessarily take into consideration common knowledge concerning the nature and use of house trailers.
However, a trailer, similarly as an "aerocar," when it is drawn or is capable of being drawn by an automobile or other motor vehicle primarily to carry persons or property over the public highways should be classified as a motor vehicle, even though it is incidentally and occasionally used to house persons over night while in transit or to house them for short periods on holidays or vacations. But where to all intents and purposes the actual primary use of such a trailer bears no reasonable relation to customary motor travel or carriage and the trailer is found to be used over longer periods than those above stated, for housing accommodations or for other non-transportation purposes, the exemption does not apply. The reason being that under such circumstances a trailer loses its primary character as a unit of motor vehicle transport and serves, for example, as an apartment or residence, and is no longer within the exempt class. However, when such a trailer is merely parked or stored for an extended period until such time as it will be used for travel or transportation over the public highways and is not used for housing accommodations or other non-transportation purpose meanwhile, the exemption will apply. During such parked or storage time while it is idle and not put to a non-transportation use, it does not lose its character as a motor vehicle transportation unit.
Section 200.45 and Section 320.081, when read and construed in connection with Section 1, Article IX and Section 13, Article IX of the State Constitution, provide that a $15.00 Florida license tag shall be purchased for an automobile trailer (house trailer or trailer coach) if the same is to be operated as a motor vehicle unit upon the public highways of the state during any motor vehicle license year; that no tangible personal property tax shall be assessed or imposed upon such trailer so long as its primary use and character is strictly that of a motor vehicle unit as hereinbefore outlined; but regardless of whether or not a Florida license tag is purchased for it (and one must be purchased if it is operated upon the highways) in any year or years if it is found by the County Tax Assessor to be primarily used for housing accommodations or any other non-transportation purpose as hereinbefore outlined then it shall be assessed and taxed at the same amount and rate that all other personal property within the county where such trailer is found is assessed and taxed.
A statute may be valid as applied to one set of facts though invalid in its application to another set of facts. Fla. Jur., page 239, citing Ex parte Wise (1940), 141 Fla. 222, 192 So. 872, and Dutton Phosphate Co. v. Priest (1914), 67 Fla. 370, 65 So. 282.
The foregoing construction of the statutes is in harmony with said constitutional *532 principles and accords to the owner of a house trailer the presumption that he is operating his trailer as a motor vehicle unit and not otherwise, in which event the only tax he is required to pay is the $15.00 annual license tag tax. However, when the owner in point of fact departs from this type of motor vehicle unit operation and devotes his trailer primarily to housing accommodations or other non-transportation use, the exemption privilege of the statutes and Section 13, Article IX no longer shields him and his trailer becomes subject to the assessment and imposition of tangible personal property taxes.
Even if Section 200.45 or Section 320.081 because of its particular language is deemed to be invalid and incapable of application as above delineated, the same result still obtains. Section 320.08(8) F.S., provides: "`MH' Series: Trailer coaches used for housing accommodations: $15.00 flat." Therefore, automobile trailers without benefit of Sections 200.45 and 320.081, would still have to carry license tags in order to be operated upon the public highways and would not be subject to tangible personal property taxes if they were primarily used as motor vehicle units as hereinbefore outlined, but once the character of their use changed primarily to housing accommodations or some other non-travel or non-transportation use or purpose they would be subject to tangible personal property taxes as hereinbefore stated. Both Sections 320.08(8) and Section 320.081 were amended by Chapter 63,528, Laws of Florida, 1963, raising the license fee from $10.00 to $15.00.
Within the ambit of the principles and conditions above outlined, the Tax Assessor pursuant to reasonable rules and regulations prescribed by the State Comptroller (see F.S. § 200.03, F.S.A.) can determine whether under the facts the exemption should or should not be extended to the owner of a trailer. In evaluating a particular claim to determine whether or not tangible personal property tax exemption would be authorized, the Tax Assessor will not be confined to a particular tax day or date, but shall take into consideration all relevant evidence over such period of time during the tax year as may be reasonably necessary to determine the true character of the trailer and its use, either as an exempt motor vehicle unit or as a non-exempt housing or non-transportation facility. F.S. Section 200.45, F.S.A. In each case the test will be the actual primary use or purpose to which the trailer has been put, taking into consideration all relevant facts and circumstances. If any owner is aggrieved as to a particular decision of a tax assessor, resort may be had to the courts. See F.S. Section 200.40, F.S.A.
The burden of proof is on the person seeking the exemption because Section 13, Article IX, as a tax exemption provision, must be construed strictly against the exemption. See Green v. Pederson, Fla., 99 So.2d 292; State ex rel. Wedgworth Farms v. Thompson, Fla., 101 So.2d 381; Harper v. England, 124 Fla. 296, 168 So. 403; Steuart v. State ex rel. Dolcimascolo, 119 Fla. 117, 161 So. 378. There are numerous other decisions enunciating this principle. It is not enough that house trailers have wheels, axles, tires, running lights and trailer hitches. Neither is it enough to show occasional use of these trailers for transporting persons or property over the public streets and highways. It must be shown that such use is the primary use. Indeed, the appellees herein did not allege in their complaint that their house trailers were primarily used, either by themselves or in conjunction with automobiles or other self-propelled motor vehicles, as a means of transporting persons or property over the public streets and highways in this state.
The judgment of the Circuit Court is hereby reversed and Sections 200.45 and 320.081, Florida Statutes, F.S.A. are declared unconstitutional insofar as they purport to expressly grant exemptions to house trailers and trailer coaches per se; but *533 are held constitutional in instances where trailers are found to be used primarily as motor vehicle units and not otherwise. The Circuit Court upon application of appellees may in further proceedings determine from the factual circumstances in the light of this opinion and decision whether the Tax Assessor improperly assessed said taxes upon appellees' trailers.
We must also reverse the lower court for imposing and taxing costs against the county officers and the State Comptroller. In a case such as the instant, the state or a county may not be held liable for costs unless such is expressly provided for by statute. Corneal v. State Plant Board, Fla., 101 So.2d 371; State ex rel. Ervin v. Colonial Acceptance, Inc., Fla., 80 So.2d 681.
Reversed.
ROBERTS, CALDWELL and HOBSON (Ret.), JJ., concur.
DREW, C.J., dissents with opinion.
THORNAL and O'CONNELL, JJ., dissent and concur with DREW, C.J.
DREW, Chief Justice (dissenting).
Because of Article IX, Section 13, of the Florida Constitution provides for a single license tax and excludes from ad valorem taxation only "motor vehicles," I believe the exemption cannot be extended, under ordinary rules of constitutional construction applied in previous decisions in this area, to any auxiliary vehicles except those which have no use or functional value whatever "unless they become a part of a motor car for the purpose of increasing its capacity."[1] (E.S.) The italicized language from the opinoin of this Court in the cited case is, in my judgment, the outer limits of construction of the pertinent constitutional provision which is permissible.
F.S. Section 320.081, F.S.A.,[2] providing that trailers "used for housing accommodations" shall be exempt from all other taxes upon payment of an annual license fee, is in my opinion clearly beyond the constitutional prescription.[3] Any vehicle so used or designed for such use may not reasonably be classified as one useful exclusively, or even primarily, as a vehicle for the transportation of goods or passengers,[4] irrespective of the problem of its auxiliary nature. I would conclude, therefore, that this statute, expressly applicable to all trailers used for housing accommodations, is on its face invalid and provides no basis for granting an exemption on the ground of actual transportation use, even assuming, but not determining, that such a legislative exemption based on actual use could be constitutionally accomplished.
*534 The remaining statutory provisions in controversy[5] seem to me to be susceptible of interpretation and application within the organic limitations herein construed. I would, however, reverse the judgment of the trial court and remand the cause for the entry of a declaratory decree finding Section 320.081 invalid and house trailers subject to ad valorem taxation.
THORNAL and O'CONNELL, JJ., concur.
NOTES
[1] Wood v. Club Transp. Service, 143 Fla. 449, 196 So. 843.
[2] "320.081 License fees for trailer coaches and trailers used for housing accommodations

"(1) This section shall apply only to trailers and vehicles not self-propelled used for housing accommodations and known as trailer coaches.
"(2) The annual license fee to be paid by said owners and operators of house trailers in the state shall be fifteen dollars; and shall be paid to the motor vehicle commissioner of the state at the same time and in the same manner as provided for other motor vehicle licenses. This license tax shall be in lieu of all other taxes and a suitable license plate shall be issued to evidence payment thereof.
"(3) It shall be permissible in this state to operate a trailer coach, licensed hereunder without a corresponding state license on the vehicle towing same."
[3] For reference to the decisions upon limitations of the related provisions of Article IX, Section 1, Fla. Const., for a uniform and equal rate of taxation and just valuation of all property other than stated exceptions, see Franks v. Davis, Fla. 1962, 145 So.2d 228.
[4] Safety regulations, F.S. Section 317.922 F.S.A., prohibit transportation of or occupancy by passengers in such vehicles while in transit, and their construction and design obviously precludes cargo transportation generally.
[5] Secs. 200.45; 320.01(1), (5); 186.03(22), (56); 217.011(57).